UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIARA AMAYA HANSON,

　　　　　　　　　　　Petitioner,

-against-

WILLIAM JOYCE, et al.,

　　　　　　　　　　　Respondents.

Case No. 1:26-cv-03326 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

On April 22, 2026, Petitioner Kiara Hanson ("Petitioner") was detained by Immigration and Customs Enforcement ("ICE") during a check-in appointment. Her detention was based on criminal charges that were, at that time, pending against her in New York State Court. The instant petition followed, challenging the lawfulness of her ICE detention and seeking her immediate release from custody or a constitutionally adequate bond hearing. For the reasons stated below, the Court GRANTS that petition in part and orders that Petitioner be given a bond hearing.

## BACKGROUND

### I.    Relevant Facts

Petitioner is a citizen of Jamaica. Dkt. 14 ("Am. Pet.") ¶ 6. She entered the United States on July 1, 2024, and was immediately detained. *Id.* ¶ 18. The same day, she was placed in expedited removal. *Id.* ¶ 19. During her detention, Petitioner expressed a fear of returning to Jamaica. *Id.* An asylum officer "made a negative credible fear determination" on July 29, 2024, but an immigration judge overruled that determination on August 1, 2024. *Id.* Thereafter, on August 12, 2024, ICE issued Petitioner a Notice to Appear, identifying her as a "[noncitizen] present in the United States who has not been admitted or paroled," and charging her as

inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (applying to noncitizens "present in the United States without being admitted or paroled") and 8 U.S.C. § 1182(a)(7)(A)(i) (applying to noncitizens who, "at the time of application for admission," lack valid entry documents). *Id.*; *see* Dkt. 14-2 ("NTA"). On August 15, 2024, ICE released Petitioner into the United States on her own recognizance. Am. Pet. ¶ 20; *see* Dkt. 14-1 ("Order of Release on Recognizance" or "OREC"). The OREC required, among other things, that Petitioner "not violate any local, State or Federal laws or ordinances." OREC at 1; *see also id.* at 3 (requiring that Petitioner "not commit any crimes while on this [OREC]").

On April 13, 2026, while on release under the OREC, Petitioner was arrested on suspicion of shoplifting in Queens, New York, Am. Pet. ¶ 25, and she was charged with one count of petit larceny and one count of criminal possession of stolen property, *see* Dkt. 14-5. She received a desk appearance ticket, which required her to appear in Queens County Criminal Court on May 1, 2026. Am. Pet. ¶ 25. A certification from the Queens County Criminal Court, dated May 7, 2026, indicates that both charges against Petitioner were ultimately dismissed. *See id.* ¶ 27; Dkt. 14-5.

However, while the criminal charges were still pending, ICE summoned Petitioner for a check-in appointment on April 22, 2026, and, when she appeared at that appointment, detained her. *Id.* ¶ 26. According to an arrest warrant issued that same day, ICE detained Petitioner under 8 U.S.C. § 1226. *See id.*; Dkt. 14-4 (warrant addressed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act . . . to serve warrants of arrest for immigration violations"); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 482 (E.D.N.Y. 2025) ("Section 236 of the INA is codified at 8 U.S.C. § 1226."). A Form I-213 created the same day states, more specifically, that "[Petitioner] is subject to mandatory detention due to her arrest under LRA," Dkt. 14-6 at 5, that is, the Laken Riley Act, Section 1226(c), *see Peralta-*

*Malla v. Mullin*, No. 26-cv-02903 (AT), 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026). The same document states that ICE "executed . . . [a] Velesaca" form for Petitioner, Dkt. 14-6 at 5 (capitalization omitted), which apparently refers to the individualized custody determinations required for noncitizens detained under Section 1226(a) by the settlement agreement in *Velesaca v. Decker*. *See* Stipulation and Order of Dismissal and Settlement ¶¶ 5, 9, *Velesaca v. Decker*, No. 20-cv-01803 (AKH) (S.D.N.Y. Mar. 10, 2022), Dkt. 177. However, no documentation of any such individualized determination has been filed before this Court.

## II.    Procedural History

Petitioner filed a petition seeking a writ of habeas corpus on April 22, 2026, through her next friend Krystal Rene Guthrie. *See* Dkt. 1. The next day, the Court set a briefing and hearing schedule for the petition and ordered Respondents to file an answer. Dkt. 3. Respondents submitted their answer on April 24, 2026. Dkt. 6. On April 27, 2026, the Court directed the Clerk of Court to attempt to locate *pro bono* counsel for Petitioner and suspended the briefing and hearing schedule pending that search. Dkt. 7. On May 8, 2026, no such counsel having been identified, the Court ordered Petitioner to respond to Respondents' answer by May 22, 2026. Dkt. 8. However, on May 21, 2026, *pro bono* counsel for Petitioner entered an appearance in the matter, Dkt. 9, and sought an extension of time to respond, Dkt. 10. Before the extended response date had passed, Petitioner sought the Court's leave to file an amended petition. Dkt. 12. The Court granted that request and set down a new briefing schedule. Dkt. 13. In keeping with that schedule, Petitioner filed her amended petition on June 5, 2026, Am. Pet.; Respondents filed an opposition brief on June 17, 2026, Dkt. 15 ("Opp."); Dkt. 16; Dkt. 17, and Petitioner filed a reply on June 23, 2026, Dkt. 20. The amended petition is fully briefed.

**DISCUSSION**

The primary issue before the Court is the statutory basis for Petitioner's detention. Respondents concede that Petitioner is no longer detained under the Laken Riley Act, 8 U.S.C. § 1226(c), given that her criminal charges have been dropped, but they argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1)(B)(ii), which mandates detention pending consideration of an asylum application, because she "is in removal proceedings based on a credible fear finding made through the expedited-removal process." Opp. at 1. Petitioner contends, to the contrary, that 8 U.S.C. § 1226(a) governs her detention. Am. Pet. ¶ 43. For the following reasons, the Court agrees with Petitioner.

**I.    Petitioner's Detention Was Initially Lawful Under Section 1226(c) But Is No Longer Detained under Section 1226(c)**

As a threshold matter, Petitioner concedes that she was initially arrested for "minor charges within the ambit of the Laken Riley Act," *id.* ¶ 48, and the record evidence reflects the same, *see* Dkt. 14-5 (showing that Petitioner's charges included petit larceny); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 498 (S.D.N.Y. 2025) ("The Laken Riley Act . . . mandates detention for noncitizens who enter the United States illegally, are released pending removal, and admit to committing, are arrested for, or convicted of 'burglary, theft, larceny, shoplifting, assault of a law enforcement officer, . . . or any crime that results in death or serious bodily injury to another person.'" (second omission in original)). Accordingly, Petitioner was subject to mandatory detention under Section 1226(c) while these criminal charges were pending. *See Oldacre v. Arteta*, No. 26-cv-02672 (JGK), 2026 WL 1398650, at *4 (S.D.N.Y. May 19, 2026) (explaining that "petit larceny fall[s] squarely within the definition of 'larceny' under New York law," and concluding that noncitizen petitioner charged with that crime "falls within the scope of § 1226(c)(1)(E)"), *amended in part on other grounds by* 2026 WL 1718184

(S.D.N.Y. June 12, 2026).  Petitioner additionally concedes that noncitizens detained mandatorily under Section 1226(c) "are not entitled to a bond hearing at the outset of their confinement."  Am. Pet. ¶ 46; *see also Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) ("[D]ue process does not require an *initial* bond determination for those detained under section 1226(c)[.]").  Therefore, Petitioner's initial detention under Section 1226(c) was proper.

Petitioner argues, and Respondents concede, that Section 1226(c) is no longer a valid basis for Petitioner's detention given that the charges against her have been dismissed.  *See* Am. Pet. ¶¶ 49-50; Opp. at 1; *see also* Dkt. 14-5 (demonstrating that Petitioner's charges were dismissed).  The Court agrees.  Indeed, "the text of § 1226(c)(1)(E)(ii) does not provide for mandatory detention where, as here, charges have been dropped." *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 388 (S.D.N.Y. 2026) (quoting *Rueda Torres v. Francis*, No. 25-cv-08408 (DEH), 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025)).  To the contrary, "Congress chose to use the present tense 'is charged with' instead of past tense terms like 'was' or 'has been' when defining the scope of the government's obligation to detain noncitizens[, and] ' . . . if criminal charges against someone have been dropped, we would not continue to say the person is "charged with" that crime, present tense.'" *H.A. v. Genalo*, No. 26-cv-02706 (AT), 2026 WL 1159512, at *4 (S.D.N.Y. Apr. 28, 2026) (first quoting 8 U.S.C. § 1226(c)(1)(E)(ii); and then quoting *Rivera Guzman v. Arteta*, No. 26-cv-02808 (DEH), 2026 WL 1045920, at *3 (S.D.N.Y. Apr. 16, 2026)); *compare Oldacre*, 2026 WL 1398650, at *4 (finding that Section 1226(c) applied to detention of noncitizen charged with petit larceny under New York law), *with Oldacre v. Arteta*, No. 26-cv-02672 (JGK), 2026 WL 1718184, at *2 (S.D.N.Y. June 12, 2026) (finding on reconsideration, in light of charge's dismissal just days before court's prior opinion, that Section 1226(c) could not justify noncitizen's ongoing detention).  Therefore, Petitioner is no

longer properly detained under Section 1226(c).  The question, then, is what statute, if any, presently justifies Petitioner's detention.

## II.    Petitioner Is Currently Detained Under Section 1226(a), Not Section 1225(b)

Petitioner contends that Section 1226(a) governs her custody.  Am. Pet. ¶ 43. Respondents argue that "[b]ecause [Petitioner] was initially placed in expedited removal proceedings under [Section] 1225(b)(1), her re-detention falls under the same statutory authority as her initial detention at the border, which requires mandatory detention pending consideration of her application for asylum."  Opp. at 10.  The Court agrees with Petitioner.  Courts in this District have rejected Respondents' argument on similar facts, and this Court joins them here.

One such case is *M.K. v. Arteta*, No. 25-cv-09918 (LAK), 2025 WL 3720779 (S.D.N.Y. Dec. 23, 2025).  There, the noncitizen petitioner was detained shortly after crossing the border, charged as inadmissible, and placed in expedited removal proceedings.  *Id.* at *1.  During his initial detention, he claimed asylum based on fear of persecution or torture if he were to be returned to his country of origin; an asylum officer found his fear "not credible," but an immigration judge later reversed that negative finding.  *Id.*  Prior to that reversal, however, ICE released the petitioner on his own recognizance, "in accordance with section 236 of the INA," *i.e.*, Section 1226.  *Id.* at *2 (alteration adopted) (citation omitted).  While released, the petitioner was twice arrested by police, though he was not convicted of charges in connection with either arrest.  *Id.*  Still, upon learning of his arrest record, ICE issued a warrant for his arrest under Section 1226 and detained him.  *See id.*  Once he was re-detained, the petitioner challenged the legality of his re-detention, and the government argued that it was proper under Section 1225(b)(1)(B)(ii).  *See id.* at *4.  The court disagreed, explaining that Section 1225(b)(1) "plainly indicates that it applies to noncitizens who are 'arriving in the United States,'" that the statute's use of "arriving" "appears to refer to a process that occurs upon physical entry into the United

States, not an interminable status that attaches to a noncitizen upon arrival," and that therefore the statute did not apply to noncitizens like the petitioner, whom ICE had released and permitted to live in the United States notwithstanding their initial detention at the border. *See id.* at *7-8 (alterations adopted) (internal quotation marks omitted) (first quoting 8 U.S.C. §§ 1225(b)(1)(A)(i)-(ii); and then quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. 2025)).

The *M.K.* court "note[d] that several district courts already" had reached the same conclusion in response to "respondents' argument that [Section 122]5(b)(1)(B)(ii) requires the detention of a noncitizen who was released under Section [122]6 pending the outcome of removal proceedings and has been living in the United States for a lengthy period." *Id.* at *5; *see also id.* at *5 n.57 (collecting cases from around the country). Other district courts in this Circuit are also in accord. *See, e.g.*, *Quinteros Moran v. Joyce*, No. 25-cv-09645 (GBD), 2025 WL 3632895, at *3 (S.D.N.Y. Dec. 15, 2025) (rejecting argument that Section 1225(b)(1)(B)(ii) authorized re-detention of petitioner released on bond under § 1226(a) years before, where government issued warrant for petitioner's arrest "pursuant to § 1226(a)" and "again invoked § 1226(a)" after apprehending petitioner, reasoning that the government had "neglected any authority it may have possessed under § 1225(b) and consistently applied § 1226(a). 'It cannot now turn back the clock, and neither can the [c]ourt.'" (quoting *Loja v. FCI Berlin, Warden*, 808 F. Supp. 3d 227, 230 (D.N.H. 2025))); *Sidqui*, 823 F. Supp. 3d at 383 (rejecting argument that "because [p]etitioner was initially detained under § 1225(b)(1)(B)(ii) . . . he continue[d] to be subject to that provision's mandatory detention requirement until his asylum application [wa]s fully adjudicated," where petitioner "was not paroled under the singular parole exception to § 1225 . . ., the [a]rrest [w]arrant was issued subject to § 1226, and [p]etitioner was detained on

that basis" and thus "the [g]overnment ha[d] continuously treated [p]etitioner pursuant to

§ 1226(a)").

These opinions rest on the same fundamental legal principles that this Court, and several

others in this District and Circuit, have repeatedly applied when adjudicating challenges to the

detention of noncitizens.  First, Section 1225 generally applies to "arriving" noncitizens, and that

word does not describe those who, like Petitioner, are already present in the United States

because ICE released them on their own recognizance after initially detaining them at or near the

border.  *See, e.g.*, *Rivera Esperanza v. Francis*, 817 F. Supp. 3d 187, 195-96 (S.D.N.Y. 2025)

(explaining that "arriving" refers to a noncitizen who is "an applicant for admission coming or

attempting to come into the United States at a port-of-entry," noting that petitioner's NTA

"clearly states that he is 'a[ noncitizen] present in the United States who has not been admitted or

paroled,' and not an 'arriving [noncitizen],'" and concluding that his re-detention was governed

by Section 1226 and not Section 1225); *J.G.O. v. Francis*, No. 25-cv-07233 (AS), 2025 WL

3040142, at *4 (S.D.N.Y. Oct. 28, 2025) (distinguishing between release on "parole into the

United States, which permits a non-citizen to physically enter the country, subject to a

reservation of rights by the [g]overnment that it may continue to treat the non-citizen as if

stopped at the border" and release on recognizance, which "releases a non-citizen *already in the*

*country* from domestic detention" (emphasis added) (internal quotation marks and citation

omitted)).  Second, when the government consistently treats a noncitizen as subject to Section

1226 over a period of months or years, it cannot later change its mind and apply Section 1225 to

justify their re-detention.  *See, e.g.*, *Villegas ex rel. Guzman Andujar v. Francis*, 815 F. Supp. 3d

248, 258-60 (S.D.N.Y. 2025) (finding that government's "interactions with [petitioner] in 2023

confirm that he is detained under § 1226(a)"; citing, among other evidence of those interactions,

his re-detention documents' being "rife with references to § 1226"; and concluding that

8

"[r]egardless of what [petitioner]'s designation *could have been* . . ., [r]espondents consistently treated him as someone already in the country pursuant to their discretionary authority under § 1226"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) ("'[T]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted,' not on 'impermissible post hoc rationalizations.'" (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020))); *da Silva v. Bondi*, No. 25-cv-01220 (LJV), 2026 WL 193635, at *2 (W.D.N.Y. Jan. 25, 2026) ("[T]he government cannot now 'change the rules by fiat, apply them retroactively, and pull the rug out from the petitioner.'" (alterations adopted) (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025))).

Here, applying these principles to Petitioner's circumstances as the courts did in *M.K.*, *Quinteros Moran*, and *Sidqui*, the Court finds that Section 1226(a) governs her present detention. Petitioner's August 15, 2024 release document expressly states that "[she is] being released on [her] own recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act." OREC at 2.[1]  That initial release occurred two weeks *after* an immigration judge reversed Petitioner's negative credible-fear determination — that is, two weeks after Petitioner became, in Respondents' current view, subject to mandatory detention under Section 1225(b)(1)(B)(ii). *See* Am. Pet. ¶ 19 (noting that asylum officer "made a negative credible fear determination" on July

---

[1] Even aside from that clear statement, Respondents concede that "[p]arole may *only* be considered in accordance with 8 U.S.C. § 1182(d)(5)(A)," and that Petitioner "was not paroled into the United States but was released under her own recognizance until she was arrested for petit larceny in New York." Opp. at 8-9.  These concessions further support a finding that Petitioner's August 2024 release from detention was a discretionary release under Section 1226(a).  Indeed, nothing before the Court suggests that Petitioner's initial release was "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Guzman Andujar*, 815 F. Supp. 3d at 260 (noting absence of record evidence indicating that petitioner's release on recognizance complied with Section 1182's procedural requirements and concluding that the "most logical conclusion to draw from" this apparent procedural noncompliance "[wa]s that [the petitioner] was . . . released on his own recognizance as a form of 'conditional parole' under § 1226").

29, 2024, but that immigration judge overruled it on August 1, 2024); NTA at 2 (reflecting that Petitioner's "Section 235(b)(1) order was vacated"); Opp. at 10 (arguing that "because Petitioner did indicate . . . fear [of persecution] and was eventually found to have established a positive credible fear, [she] is detained pursuant to Section 1225(b)(1)(B)(ii), which mandates that [s]he 'shall be' detained pending consideration of h[er] asylum application"); OREC (reflecting Petitioner's release on recognizance under Section 1226 on August 15, 2024).  And upon that release, Petitioner received an NTA that identified her as "present in the United States" rather than "an arriving [noncitizen]."  NTA at 2.  Petitioner then lived in the United States for more than a year and a half.  *See* Am. Pet. ¶ 84.  Her arrest warrant, issued April 22, 2026, invokes Section 1226.  *See* Dkt. 14-4.  Her Form I-213, completed upon her re-detention, twice alludes to her being detained under Section 1226.  *See* Dkt. 14-6 at 5 (referring to execution of "a Velesaca" form and stating that Petitioner "is subject to mandatory detention due to her arrest under [the Laken Riley Act, Section 1226(c)]" (capitalization omitted)).  In other words, Respondents have "exclusively invoked" Section 1226 in their "dealings with" Petitioner up to this point, *Quinteros Moran*, 2025 WL 3632895, at *3, and only now invoke Section 1225.  This Court joins those district courts that have rejected Respondents' similarly belated applications of Section 1225(b)(1)(B)(ii) and finds here, too, that Petitioner is not currently detained under Section 1225.  *See M.K.*, 2025 WL 3720779, at *7-8; *Quinteros Moran*, 2025 WL 3632895, at *3-4; *Sidqui*, 823 F. Supp. 3d at 383.

In sum, Petitioner is not subject to mandatory detention under Section 1225(b) or Section 1226(c).  As a result, she is "subject only to discretionary detention under § 1226(a)."  *H.A.*, 2026 WL 1159512, at *5; *see also Oldacre*, 2026 WL 1718184, at *3 ("Because mandatory detention under § 1226(c)(1)(E) no longer applies to [petitioner], [petitioner] may be detained only under § 1226(a)[.]").

### III.    Remedy

The remaining question, in light of the above analysis, is the proper remedy.  Petitioner argues that her immediate release is proper, because her detention under Section 1226(a) entitles her to an individualized determination that she did not receive, and thus her due process rights have been "irrevocably violated."  Am. Pet. ¶ 93; *see id.* ¶¶ 89, 93-94.  In the alternative, Petitioner seeks a constitutionally adequate bond hearing.  *Id.* ¶ 35.  Respondents, relying on their assertion that Section 1225(b)(1)(B)(ii) provides the basis for Petitioner's detention, offer no argument as to the proper remedy in the event that the Court disagrees with that basis.  The Court finds that a bond hearing is the appropriate remedy here.

As discussed, Petitioner was initially — and properly — detained under Section 1226(c), and "due process does not require an *initial* bond determination for those detained under [S]ection 1226(c)."  *Black*, 103 F.4th at 142.  Accordingly, this case is unlike those in which the noncitizens' detention was initially unconstitutional for lack of individualized assessment.  *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 486, 494-95 (finding that noncitizen petitioner was detained under Section 1226(a) rather than Section 1225(b), that Section 1226(a) "requires a valid exercise of DHS's discretion," and that respondents "ha[d] not offered any explanation for [petitioner]'s detention other than their initial assertion that it is mandatory — that is, that it is *non-discretionary*").  Rather, ICE properly detained Petitioner at a time when her pending criminal charges mandated her detention without the need for an individualized determination; now that those charges have been dismissed, however, Section 1226(c)'s strictures no longer apply, and Petitioner is newly entitled to an individualized determination.[2]  That means a bond hearing is the proper remedy, not Petitioner's immediate release from custody.

---

[2] The record before this Court indicates that Petitioner may have in fact received such a determination at the outset of her detention even though it was not constitutionally required, *see*

11

**CONCLUSION**

Having found that Petitioner was initially subject to mandatory detention under Section 1226(c) but is now subject only to discretionary detention under Section 1226(a), the Court GRANTS her habeas petition to the extent she seeks a bond hearing.  Accordingly, by **July 20, 2026**, the immigration court must either (1) hold a bond hearing at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk, or (2) release Petitioner.  In determining whether to grant bond, the immigration judge shall consider, on the record, the availability of alternative conditions of release; in determining the amount of any bond imposed, the immigration judge shall consider Petitioner's ability to pay.  Respondents shall file an update with the Court, no later than **July 21, 2026**, certifying that Petitioner has received a bond hearing or that she has been released from custody.  The Clerk of Court is respectfully directed to CLOSE the case.

Dated:  July 16, 2026
        New York, New York

SO ORDERED.

_Jennifer Rochon_
_____
JENNIFER L. ROCHON
United States District Judge

---

Dkt. 14-6 at 5 (indicating that ICE completed a *Velesaca* worksheet for Petitioner upon detaining her), but Respondents do not highlight that fact here, and they have not provided the Court with a copy of a *Velesaca* worksheet to establish that they made such a determination.